UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 3:03-CR-185 (JCH) |
| | : | |
| v. | : | |
| | : | |
| JAMES DEMPSEY | : | August 26, 2005 |

**GOVERNMENT'S SENTENCING MEMORANDUM AND MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR DOWNWARD DEPARTURE**

The United States has filed a "substantial assistance" motion in this case pursuant to

Section 5K1.1 of the United States Sentencing Guidelines and 18 U.S.C. § 3553(e).  The motion

requests that the Court impose a sentence below the defendant's applicable guideline range

because the defendant has provided substantial assistance to the Government in the investigation

and prosecution of other persons who have committed criminal offenses.  The nature, extent, and

significance of the defendant's cooperation are detailed in this memorandum.

**I. Introduction**

On June 30, 2003, pursuant to a plea agreement, James Dempsey entered a plea of guilty

to a one-count information charging him with conspiracy to impair and impede the lawful

govenmental functions of the Internal Revenue Service, in violation of Title 18, United States

Code, Section 371.  As part of a plea agreement, the parties stipulated that the defendant

conspired with Kurt Claywell to defraud the United States and to impair the administration of the

revenue in connection with federal employment taxes.  Specifically, the defendant admitted

preparing a falsified computer printout to be submitted to an IRS Revenue Agent during a 1998

employment tax audit of Claywell's electrical contracting companies.  The Revenue Agent had

been trying to determine whether anyone paid by Claywell as a subcontractor (with no

employment taxes paid) instead should have been paid as an employee.  Together with Claywell

and his accountant Roger Bennett, the defendant agreed to create a falsified printout which purported to be a list of subcontracting expenses, but which falsely omitted certain payments which the Revenue Agent would have re-categorized as taxable payments to employees. As a result of this fraud, Claywell evaded approximately $10,500 in employment taxes.

Aside from the defendant's involvement in the falsified printout, the remaining information about the defendant's activities discussed herein was largely provided by the defendant himself during proffer sessions. Accordingly, pursuant to U.S.S.G. § 1B1.8, this information may not be taken into consideration when calculating the defendant's offense level at sentencing.

The plea agreement entered into by the United States and the defendant calculates the defendant's offense conduct at an offense level of 12. Subtracting two levels for acceptance of responsibility, pursuant to Guidelines Section 3E1.1, results in a total offense level of 10. With a Criminal History Category of I, the defendant is exposed to a term of incarceration of 6-12 months. Sentencing is scheduled for August 31, 2005.

## II.  Discussion

Section 5K1.1 of the Sentencing Guidelines permits the Court to impose a sentence of imprisonment below a defendant's applicable Sentencing Guideline range

> [u]pon motion of the government stating that the defendant has provided
> substantial assistance in the investigation or prosecution of another person who
> has committed an offense, . . .

U.S.S.G. § 5K1.1. Section 3553(e) of Title 18 of the United States Code permits the Court to impose a sentence of imprisonment below the otherwise applicable statutory minimum under the same circumstances. The decision whether to make a motion for downward departure rests

exclusively with the Government. 18 U.S.C. § 3553(e); U.S.S.G. § 5K1.1; *United States v. Garcia*, 926 F.2d 125, 128 (2d Cir. 1990) (quoting *United States v. Rexach*, 896 F.2d 710, 714 (2d Cir. 1990)); *United States v. Huerta*, 878 F.2d 89 (3d Cir. 1989). The Court in *Huerta* observed that the question of "substantial assistance" is "self evidently a question that the prosecution is uniquely fit to resolve." *Huerta*, 878 F.2d at 92. Upon the filing by the Government of a motion pursuant to U.S.S.G. § 5K1.1 and Section 3553, "the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect on defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." 18 U.S.C. § 3553(e). *See also Huerta*, 878 F.2d at 94. The Sentencing Guidelines, Section 5K1.1(a), provide that the appropriate reduction shall be determined by the Court based upon, but not limited to, the following considerations:

(1)     the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2)     the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3)     the nature and extent of the defendant's assistance;

(4)     any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance; and

(5)     the timeliness of the defendant's assistance.

These criteria are addressed in turn below.

A.     **Nature and Extent of the Defendant's Assistance**

In multiple debriefing sessions with federal authorities, the defendant provided significant information about financial activities at Claywell Electric Co., Inc., and particularly about illegal

activities involving the company's owner, Kurt Claywell.  Among other things, the defendant

provided significant information about Claywell's falsification of additional documents during

the 1998 employment tax audit (beyond the printouts of which the Government had been aware);

about Claywell's scheme of withholding taxes from employee paychecks, but failing to remit

those taxes to the IRS; about Claywell's manipulation of his corporate books to deceive his

bonding company (which insured the completion of electrical contracts); and about Claywell's

agreement to pay one employee under the table so that he could fraudulently appear eligible for

Social Security benefits.  The defendant reviewed records obtained through search warrants and

grand jury subpoenas, and assisted the Government in reconstructing certain financial matters.

The defendant also assisted the Government in accessing and reviewing electronic data stored in

Claywell's computerized accounting system, which had been obtained by subpoena.  The

information was useful to the Government in establishing Claywell's guilty knowledge and intent

with respect to acts of tax evasion involving total losses in excess of $550,000.

      **B.**       **Significance and Usefulness of the Defendant's Assistance**

The assistance provided by the defendant has been extremely valuable.  In part as a result

of the defendant's cooperation, authorities executed a search warrant on the premises of Claywell

Electric.

For example, on multiple occasions, the defendant met with agents to assist them in

accessing records from Claywell's computerized records.  This was particularly useful, given the

fact that Claywell Electric used specialized software designed specifically for contractors, and

data was stored in ways that were not easily retrievable by those unfamiliar with the software.  At

the agents' request, the defendant was able to locate particular transactions which demonstrated

how Claywell managed to manipulate his corporate books.  For example, the defendant had

explained to the Government that Claywell never "closed" his accounting books on a periodic

basis (contrary to standard accounting practices), so that he could later alter records at will, as

convenient for evading taxes.  The defendant then assisted agents in identifying particular

accounting entries -- which appeared innocuous to the untrained eye -- in which Claywell had

shifted expenses among jobs in such a way as to evade significant amounts of taxes.  The

defendant willingly took time to review these accounting and other records, and his efforts were

of substantial assistance in reconstructing how Claywell's accounting frauds were structured.

The defendant also discussed in some detail how Claywell manipulated his periodic

"work-in-progress" reports to deceive his bonding company and to evade taxes.  The corporate

income tax returns of Claywell Electric Co. are calculated according to the completed-contracts

method of accounting.  According to this method, the corporation realized income and expenses

relating to a particular contract for tax purposes only in the year in which work for that contract

was completed.  From 1997 through 2001, Claywell directed the defendant and others to alter the

work-in-progress reports of Claywell Electric Co., in order to minimize the amount of income

that would be recognized for tax purposes in any given year.  They altered records to make

completed jobs appear to be still open, so that income attributable to those jobs would not be

realized in a timely manner.  Additionally, Claywell would direct the defendant and others to

alter records to shift costs into more profitable contracts that were closing, and to shift costs out

of less profitable jobs that were closing, so that the corporation would ultimately report less

income on its corporate income tax returns.  The defendant knew that Claywell's accountants

prepared corporate tax returns for Claywell Electric Co., Inc., based on the false figures

contained in the altered work-in-progress reports.  This, in turn, made the corporate tax returns themselves false.  All of this was done at Claywell's behest, and this information was substantially corroborated by Bennett.

Due in part to the defendant's cooperation, Kurt Claywell and Roger Bennett each entered guilty pleas pursuant to plea agreements, in which each admitted participating in a *Klein* conspiracy with the defendant to impair and impede the due administration of the federal tax laws.  Furthermore, in part because of the defendant's cooperation, the plea agreement between Claywell and the United States contained a full stipulation of his sentencing guidelines, with no disputed issues regarding base offense level or enhancements.  (The only real disputed issue at Claywell's sentencing related to later-arising facts, namely Claywell's failure to accept responsibility based on his submission of false amended tax returns.)

   **C)      Truthfulness, Completeness and Reliability of the
            <u>Defendant's Information and Testimony</u>**

Evidence obtained from other sources, including documents and other cooperating witnesses, substantially corroborates information provided by the defendant, which therefore is believed to be complete, truthful and reliable.  For example, the defendant provided a detailed account of how Claywell instructed him and others to manufacture false documentation in connection with the 1998 employment tax audit.  This information was substantially corroborated by cooperating witnesses Roger Bennett and Pamela Hill, as well as other former employees of Claywell Electric.  Likewise, after the defendant described how Claywell shifted job costs to evade taxes, he was able to identify specific bookkeeping entries through which this shifting had been achieved.

   **D)      <u>Timeliness of the Defendant's Assistance</u>**

In this case, the defendant provided timely information.  He was the first of four

cooperating witnesses to agree to provide the Government with information relating to

Claywell's crimes, and the first to agree to plead guilty.  (For scheduling reasons only, his plea

happened to be the last to take place.)  Early in the investigation, the Government confronted

Dempsey with information indicating that he had been involved in creating the falsified computer

printouts during the 1998 audit.  Dempsey (represented by Attorney Richard Brown) immediately

agreed to cooperate with the Government.  Based on information he provided, the Government

learned of the involvement of Roger Bennett in the 1998 audit fraud scheme -- and this revelation

allowed the Government in short order to secure Bennett's cooperation, which also proved to be

quite valuable.

Dempsey met with agents and prosecutors on multiple occasions, including proffer

sessions.  He provided significant information before the indictment of Kurt Claywell, all of

which was provided at a time that was ultimately useful in obtaining a search warrant and

arriving at Claywell's eventual guilty plea.

### E)    Injury Suffered by the Defendant

As a result of his cooperation against Claywell, the defendant has no longer been

employed as a bookkeeper at Claywell Electric.

### III. Conclusion

The Government believes that the nature and extent of the assistance provided by the

defendant warrants the filing of a substantial assistance motion so that the Court has the

discretion to depart downward from any applicable guideline range.  In cooperating with the

Government, the defendant provided extensive information about the criminal activities of

Claywell.  His cooperation was partially responsible for the guilty pleas entered by Kurt Claywell and Roger Bennett.

The Government believes that the defendant's guidelines are correctly calculated in the plea agreement, and that the defendant's offense level is 10, with a criminal history category of I. The Government respectfully requests that the Court impose a sentence below the defendant's applicable guideline range.

Respectfully submitted,

JOHN H. DURHAM
ACTING UNITED STATES ATTORNEY


STEPHEN B. REYNOLDS
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. CT19105

for WILLIAM J. NARDINI
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. CT16012
157 CHURCH STREET, 23RD FLOOR
NEW HAVEN, CT 06510
(203) 821-3748
fax (203) 773-5377
william.nardini@usdoj.gov

<u>CERTIFICATION OF SERVICE</u>

This is to certify that a copy of the within and foregoing has been sent by e-mail this

26thday of August, 2005 to:

> Richard R. Brown, Esq.
> Brown Paindiris & Scott, LLP
> 100 Pearl Street
> Hartford, CT 06103-4506
> rbrown@bpslawyers.com

> _____
> Stephen B. Reynolds, Assistant U.S. Attorney,
> for William J. Nardini, Assistant U.S. Attorney